## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| **GARRY R. ARCHEY, JR.,** | ) | **Case No. 3:15-cv-00213-SLG-SAO** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **vs.** | ) | **REGARDING MERITS PETITION FOR** |
| | ) | **WRIT OF HABEAS CORPUS** |
| **JOHN CONANT,** | ) | **28 U.S.C. § 2254(d)** |
| | ) | |
| **Respondent.** | ) | **(Dockets 19 and 39)** |
| | ) | |

## I. INTRODUCTION

Before the court is Petitioner Garry R. Archey's First Amended 28 U.S.C. §2254 Petition for Writ of Habeas Corpus.[1] He filed a merits brief in support of his petition.[2] John Conant ("the State Custodian") entered an opposition.[3] Archey makes two arguments. First, he asserts that Alaska unreasonably applied clearly established Supreme Court Authority when it adjudicated a Fifth Amendment due process Strickland ineffective assistance of counsel claim.[4] Second, he claims, for the first time in his merits brief, that the Alaska Court of Appeals made an unreasonable determination of the facts in light of the evidence presented at trial when it adjudicated Archey's post-conviction relief appeal.[5]

---

[1] Dkt. 19.

[2] Dkt. 39.

[3] Dkt. 43. John Conant was the acting State Superintendent of Goose Creek Correctional Center where Archey is serving his sentence.

[4] Dkt. 19 at 10; 39 at 20–24; Strickland v. Washington, 466 U.S. 668 (1984).

[5] Dkt. 39 at 3, 17, 18–20; See Archey v. State (Archey II), No. A-11516, 2015 WL 1881554 (Alaska App. April 22, 2015).

1

Archey filed his initial habeas petition in District Court on November 4, 2015.[6] On November 24, 2015, this Court ordered counsel appointed to represent Archey and ordered deadlines for Archey to file an amended petition and for the respondent to file an answer or response.[7] On November 30, 2015, the Federal Defender was appointed to represent Archey.[8] On September 26, 2016, Archey, represented by counsel, filed his first amended petition.[9] The respondent opposed.[10] Archey filed a reply in support of his first amended petition on November 9, 2016.[11] On August 24, 2017, Archey filed his merits brief.[12] On October 23, 2017, the state custodian filed his merits brief.[13] Archey did not file a reply. Neither party requested oral argument and it was not necessary for determination of the issues.

For the reasons set forth below, considering the arguments of each party, this court RECOMMENDS DENIAL of the Petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. Pre-Trial.

On September 8, 2006, the State of Alaska indicted Garry R. Archey, Jr., on five counts related to the manufacture of methamphetamine in Soldotna, Alaska.[14] Count I charged Misconduct Involving a Controlled Substance in the Second Degree for producing

---

[6] Dkt. 01, Petition for Writ of Habeas Corpus.

[7] Dkt. 05, Order Directing Service and Response.

[8] Dkt. 09, Order Granting Motion to Withdraw at Dkt. 07 and appointing attorneys.

[9] Dkt. 19, Petitioner's First Amended Petition for Writ of Habeas Petition.

[10] Dkt. 22, Respondent's Response to First Amended Petition.

[11] Dkt. 23, Petitioner's Reply in Support of First Amended Petition.

[12] Dkt. 39, Petitioner's Merits Brief.

[13] Dkt. 43, Respondent's Merits Brief.

[14] Dkt. 39 at 7.

2

methamphetamine.[15] Counts II, III, and IV charged Misconduct Involving a Controlled Substance in the Second Degree for possession of precursor chemicals, namely red phosphorous, acetone, and iodine, used for manufacturing methamphetamine.[16] Count V alleged Misconduct Involving a Controlled Substance in the Fourth Degree for maintaining a structure to manufacture methamphetamine.[17]

Archey entered pleas of not guilty and was represented by Office of Public Advocacy attorney Hatton Greer.[18] Before going to trial, Archey moved to dismiss the indictment based on the prosecutor's statements to the grand jury regarding a witness's credibility.[19] The trial court denied the motion; the Alaska Court of Appeals later affirmed.[20]

Archey's former girlfriend, Lisa Samson, was also charged with various drug distribution offenses, and pleaded guilty to two reduced counts of Misconduct Involving a Controlled Substance in the Fourth Degree for possession of methamphetamine and for Maintaining a Dwelling for the Keeping or Distributing of Controlled Substances.[21] As a condition of her plea agreement, she agreed to testify at Archey's trial.[22]

B. Trial and Sentencing.

---

[15] Id. at 7.

[16] Id. at 7.

[17] Id. at 7.

[18] Id. at 7.

[19] Id. At 7.

[20] Id. at 7; See Archey v. State (Archey I), No. A-10129, 2010 WL 2436739 at *1 (Alaska App. June 16, 2010)

[21] Dkt. 19 at 3–4.

[22] Id.; Dkt. 43 at 1, 8.

3

At trial, the State presented evidence that in 2006, Archey worked as a handyman for a family friend, Gary Grover.[23] Grover had two adult step-daughters, Lisa Samson and her sister Joanna Samson-Sills (Sills),[24] who lived in separate residences on Grover's one-acre Soldotna property. Sills lived in a cabin on the property with her children.[25] Samson lived in a trailer with a plywood structure attached to it.[26]

Samson testified that she and Archey began a romantic relationship that lasted approximately four months.[27] Archey sometimes stayed at Samson's trailer.[28] Samson, Sills, and Archey used crystal methamphetamine during this time.[29]

Officers testified that in August 2006, the Soldotna Police Department reviewed pharmacy drug sales logs and noticed that Archey, Samson, and Sills had purchased Sudafed frequently, and police believed that the Sudafed was probably used in manufacturing methamphetamine.[30] Law enforcement responded to the Grover property, arresting Samson on outstanding warrants.[31] Police interviewed Sills, who said that methamphetamine had been

[23] Dkt. 39 at 5.

[24] Nearly all of the pleadings in this case refer to Joanna Samson-Sills as "Sills" to avoid confusion. We continue to do so here.

[25] Tr. 335, 430; Dkt. 39 at 5. A partial transcript of the trial and other trial court hearings in this case is entered in the docket as Docket Nos. 20-1 ("Volume II," containing pages 46–518) and 20-2 ("Volume III," containing pages 520–1060). Each page of the transcript copy in the docket is marked with three separate page numbers: the rightmost-justified number, in Courier font, that appears to be a part of the original transcript and two that are listed identically as Page X of YYY. This report and recommendation will cite to "Tr." and use the page number in Courier font.

[26] Tr. 335, 577–78; Dkt. 39 at 5.

[27] Tr. 580; Dkt. 39 at 5.

[28] Dkt. 39 at 5.

[29] Id. at 5; Tr. 581, 666.

[30] Dkt. 39 at 6; Tr. 126–28, 267-68, 305-06, 325–26.

[31] Dkt. 39 at 6.

4

manufactured in Samson's trailer.[32] Archey, when contacted by police: first, closed the door of Samson's trailer; next, left the property to go to a neighbor's house; then asked the neighbor, Pat Price, to lock Samson's trailer with a padlock; and finally, after Price returned with police after reporting that Archey had requested he install the padlock, Archey fled into the woods.[33] Archey was later arrested for violating conditions of his parole.[34]

Police obtained a warrant to search the property,[35] and found a black duffel bag in a "bear hole" in the ground, about 30 feet from the back of the main cabin and 40 feet from Samson's trailer.[36] The bag held equipment and liquids used in the manufacture of methamphetamine as well as bi-phase liquids containing methamphetamine.[37] The prosecution referred to this duffel bag at trial as the "mobile meth lab."[38] Police also searched the trailer and discovered items used in the manufacture of methamphetamine.[39] The prosecution argued that these items were Archey's, and that he discarded the bag in the hole during his flight from police.[40]

The prosecution presented witness testimony from Lisa Samson and Sills, among others. Samson testified that she had used methamphetamine with Archey, though she said she had never used it before meeting Archey.[41] Samson denied manufacturing methamphetamine and

---

[32] Id.

[33] Id.

[34] Id.

[35] Id.

[36] Tr. 373–74.

[37] Dkt. 39 at 6.

[38] Id. at 7; Tr. 538, 558; see also Tr. 673, 989.

[39] Dkt. 19 at 3.

[40] Dkt. 39 at 7.

[41] Id. at 8, Dkt. 19 at 4.

5

denied recognizing that certain chemicals and materials for manufacturing methamphetamine were in her trailer.[42] Samson admitted purchasing Sudafed, saying she had because Archey had asked her and her sister to do it.[43] Sills also admitted purchasing Sudafed and using methamphetamine.[44] Sills testified that Samson knew that Archey was using Sudafed to manufacture methamphetamine.[45]

Samson testified that she had hidden a black bag once before, when Archey had gone to jail, unrelated to the methamphetamine charges, in July 2006.[46] She testified that Archey's friend "Lester" called to ask her to hide a bag that was underneath her trailer.[47] Samson and her sister hid the bag in a hole on the property.[48] Sills's testimony corroborated the report that the sisters had buried a bag in a hole in the ground, though according to Sills, the sisters originally found the bag in the trailer's bathroom.[49]

During recross examination by Archey's counsel, Samson identified "Lester's" last name as Pentecost.[50] Archey claims in his brief that defense counsel asserted "on several occasions" that he would call Pentecost to cast doubt on Samson's and Sills's testimony that

---

[42] Dkt. 39 at 8.

[43] Id.; Tr. 584.

[44] Dkt. 39 at 9.

[45] Id., see Tr. 643.

[46] Dkt. 39 at 8.

[47] Id.

[48] Id.

[49] Id. at 9. Sills recalled at Grand Jury that the black bag they buried in July 2006 was different than the bag prosecutors were calling the "mobile meth lab." Id. at 9 fn.6. But Archey does not argue that this information came out at trial. At trial, Sills recalled "a black luggage type bag" that she had seen Archey "carry on several occasions," but she had not seen him with any other bags. Tr. 647.

[50] Tr. 629. Outside the presence of the jury, the prosecutor identified "Lester" as Gordon Pentecost. Tr. 680.

6

incriminated Archey.[51] The defense did not promise Pentecost's testimony in his opening argument.[52] Nor did defense counsel's closing argument rely on Pentecost, though he mentioned "Lester" when recounting Samson's and Sills's testimony about hiding the duffel bag.[53] After prosecution rested, the defense made two motions for judgment of acquittal: one as to Count III, which alleged possession of acetone, a listed prohibited precursor chemical used in the production of methamphetamine, and one as to Count V, which alleged maintaining premises— the black bag—for manufacturing methamphetamine.[54] The trial court denied both motions.[55]

The defense case focused on debunking Samson's claim that Archey had called her in July 2006 from jail asking her to hide a black bag. He presented evidence that Archey was in jail during the time Samson said that Archey had contacted her indirectly through Pentecost.[56] The defense theory on this point relied on an assumption that Samson initially told prosecutors that Archey had called her directly to ask her to hide the bag when he was in jail.[57] The defense apparently believed that, at some point before giving testimony, Samson learned that this statement would not be credible because of jail rules against calling cell phones. A corrections

---

[51] Dkt. 39 at 2, 8, 10; c.f. Tr. 636–37 (largely indiscernible portion of the transcript that suggested that defense counsel had one additional witness that he "had to find," and suggesting that witness was Pentecost), 671 (defense counsel notifying court out of the presence of the jury that he had a subpoena prepared for Pentecost), 680–82 (discussion among parties and court about whether Pentecost's testimony would be allowed into evidence). The Tr. citations listed here are the only places in the trial record that the Court is aware defense counsel mentions he planned to call Pentecost.

[52] Tr. 682.

[53] Tr. 980–90.

[54] Dkt. 39 at 9.

[55] Id.

[56] Id. at 10.

[57] Tr. 728.

7

officer testified that Archey was not able to call any cell phones while incarcerated.[58] The defense demonstrated that Archey would not have been able to call Samson directly from jail because she did not have a landline.[59] Defense counsel also attempted to undermine Samson's testimony that a third party, Pentecost, had called to give her Archey's directions to hide the bag.[60] However, the defense did not present Pentecost's testimony at trial.

Whether Pentecost was actually available to testify at trial came out several years later. Gordon Pentecost executed an affidavit on March 1, 2012 relating to his knowledge of Samson and Archey at the time of Archey's trial.[61] In his affidavit, he wrote:

> I, Gordon Pentecost, also known as Lester Pentecost, being first duly sworn, depose and state that:
>
> I am personally acquainted with Lisa Samson and Gary [sic] Archey. I have known them since 2006. During the spring and summer of 2006, I observed Lisa Samson making methamphetamine in her residence, the trailer Samson lived in]. It appeared to me that she was in control of the meth lab at all times. In addition to the fact that it was located at her residence, she was the person who operated it, and she made statements which indicated to me that she believed it to be her property and under her control.
>
> When Gary [sic] Archey was charged with crimes related to the lab, I told his attorney, Hatten [sic] Greer, that I had personal knowledge that the lab really belonged to Lisa Samson. I told him that, if necessary I would testify for the defense.
>
> I was available as a witness during Mr. Archey's trial, but Mr. Greer never called me to testify.[62]

---

[58] Tr. 620.

[59] Tr. 621.

[60] Tr. 620–21.

[61] Dkt. 21-5 at 4–5.

[62] Id.

At around the same time,[63] defense trial counsel also submitted an affidavit, dated April 19, 2012, detailing his best memory of the circumstances surrounding his decision whether to call Pentecost as a witness.[64] Defense counsel could not remember if he interviewed Pentecost at the time of the trial.[65] Defense counsel did recall that he spoke to a local defense attorney about Pentecost, who had represented a co-defendant of Pentecost's in a recent case.[66] He recalled that attorney "was of the opinion that if Mr. Pentecost was facing legal trouble, he would try to help out the State in hope of getting consideration on his case."[67]

In light of these sworn statements, this court finds that defense counsel Greer did talk directly to Pentecost at the time of Archey's trial. Although Greer doesn't remember whether they talked or not, Pentecost states that they had. Greer in 2012 no longer had access to his case files because the principal in his former firm had moved out of state.[68] Pentecost's unequivocating statement appears credible, and Greer's lack of memory is reasonable given the time that had passed.

At trial, the state sought to present a rebuttal case. To rebut the suggestion that Archey did not contact, nor arrange to have someone contact, Samson from jail, Alaska requested DOC recordings of inmate calls attributed to Archey in July 2006.[69] Wildwood Correctional Complex, where Archey had been imprisoned, did not have recordings from the

---

[63] The affidavits of Pentecost and defense trial counsel were made in support of Archey's Second Amended Application for Post-Conviction Relief, dated March 19, 2012. Dkt. 21-5 at 1–3. For further discussion of the PCR proceedings, see Subsection D of this Section, infra.

[64] Dkt. 21-6.

[65] Id. at 2.

[66] Id.

[67] Id.

[68] Id. at 1.

[69] Dkt. 19 at 5, Dkt. 39 at 10–11.

requested period.[70] They did, however, produce two recorded phone calls between Archey and his son, and two phone calls between Archey and his mother, made August 31, 2006-September 1, 2006.[71] The State sought to admit two phone calls between Archey and his son, but not those between Archey and his mother.[72] The defense objected to the admission of the recordings. After an evidentiary hearing, the court allowed the State to introduce excerpts of the two jail phone calls between Archey and his son as rebuttal evidence.[73] The two phone calls to his mother were not admitted.

The jury convicted Archey on all counts.[74] He was sentenced to 20 years on each of the first four counts, and five years on the fifth count, all to run concurrently.

C. Direct Appeal - Alaska Court of Appeals and Alaska Supreme Court.

Archey I

Archey appealed his conviction and sentence. He argued that (1) the prosecutor improperly vouched for a witness at grand jury; (2) insufficient evidence supported the conviction on Count V, maintaining a structure for the manufacture of methamphetamine; (3) insufficient evidence supported Count III, possession of acetone; (4) the trial court erred in admitting Archey's jail phone calls in violation of discovery rules; and (5) his sentence was

---

[70] Dkt. 39 at 10.

[71] Dkt. 39 at 11.

[72] Tr. 933.

[73] The prosecution argued that they sought the jail phone call recordings in response to the defense claim that Pentecost had been subpoenaed and would be called to testify. Tr. 916. The prosecutor had at least five of Pentecost's criminal files, including a pending case and a petition to revoke probation for an older sentence. Id. This corroborates Greer's 2012 recollection that an attorney who had represented a co-defendant of Pentecost's around the time of Archey's trial. See supra note 67. Tr. 923. Exhibit 105.

[74] Dkt. 39 at 12.

excessive.[75] In <u>Archey I</u>, the Court of Appeals reversed the conviction for Count V, maintaining a structure containing a methamphetamine lab. The Court denied the rest of Archey's claims.[76]

Relevant to the instant habeas petition, the court in <u>Archey I</u> engaged in an analysis of the recorded jail phone calls. The Court of Appeals found:

> Although the State was unable to find any evidence of a call to Pentecost, the State did discover calls that Archey made to his son. On the tapes, Archey's son mentioned that the police had found the black bag, and Archey responded that someone should tell Sills to stop talking to the police. This evidence suggested that Archey knew about the bag, and that he blamed Sills for its discovery . . . Archey's defense suggested that Sills owned the black bag and that he did not make any phone calls from jail asking Samson to move it. The State's rebuttal evidence indicated that Archey did make a phone call from jail suggesting that he knew about the black bag. This newly discovered evidence fell well within the judge's authority to allow new evidence to support the State's case-in-chief for good reason and to make the presentation effective for the ascertainment of the truth.[77]

Archey petitioned the Alaska Supreme Court to review the decision finding evidence sufficient to uphold his conviction on Count III. The petition was denied on August 31, 2010.[78]

D. <u>Post-Conviction Relief Proceedings.</u>

On February 7, 2008, while his direct appeal was pending, Archey filed a pro se post-conviction relief application.[79] Through appointed counsel he filed an amended post-

---

[75] <u>Archey v. State (Archey I)</u>, No. A-10129, 2010 WL 2436739 at *1 (Alaska App. June 16, 2010); Dkt. 39 at 12.

[76] <u>Archey I</u> at *6.

[77] <u>Archey I</u>, 2010 WL 2436739, at *4–5.

[78] Dkt 19 at 6, 39 at 14; <u>see Archey v. State</u>, No S-13919 (Alaska Supreme Court Order).

[79] Dkt. 14 at 6, 39 at 14, 21-1.

conviction relief application on August 30, 2011.[80] Alaska filed a motion to dismiss for failure to state a *prima facie* case, and Archey filed a second amended post-conviction relief application on March 19, 2012.[81] His applications raised several arguments that his trial and appellate attorneys had been ineffective: (1) trial counsel failed to challenge the admission of the jail phone call Archey made to his son; (2) he failed to object to the lack of evidence corroborating the testimony of accomplice witnesses; (3) he failed to call potential exculpatory witnesses; (4) he failed to investigate potential exculpatory witness Gordon Pentecost; and (5) appellate counsel failed to challenge the admission of the jail phone call in Archey's petition for review to the Alaska Supreme Court.[82] The trial court dismissed the post-conviction relief application for failure to state a prima facie case on February 6, 2013.[83]

Regarding Pentecost, the trial court reasoned that Pentecost's affidavit did not specify that Pentecost could testify that Archey had not possessed or manufactured methamphetamine, and therefore Pentecost's testimony would have little bearing on Archey's guilt.[84] The court found that defense trial counsel did conduct a pre-trial investigation with respect to Pentecost.[85] The court concluded that Archey "had not rebutted the presumption that his trial attorney's decisions were not the result of a sound trial strategy."[86]

In Archey II, Archey appealed the superior court's dismissal of his PCR application. He argued that his trial counsel's affidavit did make a *prima facie* showing that his

---

[80] Dkt. 21-2.

[81] Dkt. 19 at 6, 39 at 14, 21-5.

[82] Dkt 19 at 7, 39 at 14, 21-1, 21-2, 21-5.

[83] Id., Archey v. State (Archey II), No A-11516, 205 WL 1881554 at *1 (Alaska App. April 22, 2015).

[84] Dkt. 21-9 at 7.

[85] Id.

[86] Dkt. 19 at 7, 39 at 15, 21-9 at 8.

attorney performance was deficient because he relied on a representation by another attorney in deciding that Pentecost would not be a good witness.[87] He also renewed his claim that his attorney was ineffective for failing to exclude the jail phone call to his son.[88]

The Court of Appeals affirmed the superior court's decision. Regarding Pentecost's testimony, the court held that even if Archey's attorney failed to investigate Pentecost and his potentially exculpatory contribution to Archey's case, Archey did not show prejudice.[89] The Court reasoned that Pentecost would testify about Archey's lack of ownership of the trailer, and not about Archey's involvement, or lack of it, in manufacturing methamphetamine.[90] Pentecost could only testify that Samson "controlled [and operated] the methamphetamine laboratory."[91] Because the conviction for maintaining premises to manufacture methamphetamine had been dismissed on direct appeal in Archey I, "there is no reasonable possibility that his testimony would have altered the outcome of Archey's case."[92]

The Court of Appeals also agreed with the superior court that Archey did not support his claim that the admission of the jail phone calls violated discovery rules because he made only cursory, unsupported statements that the evidence was available to the prosecution as ordinary pretrial discovery.[93] "The superior court was not obligated to accept Archey's 'pro forma assertions of the ultimate facts to be proved,' even at the pleadings phase."[94]

---

[87] Dkt. 19 at 8, 39 at 15–16.

[88] Archey II, 2015 WL 1881554 at *1.

[89] Id. at *3.

[90] Id. .

[91] Id. at *3, 2.

[92] Id. at *3.

[93] Id. at *2.

[94] Id. at *2 (citing LaBrake v. State, 152 P.3d 474, 481 (Alaska App. 2007)).

13

Archey petitioned the Alaska Supreme Court for review on July 27, 2015. He again argued that trial counsel was ineffective for failing to investigate Pentecost and for relying on another attorney's assessment of Pentecost's credibility.[95] Archey asserted that the Court of Appeals did not properly consider the prejudice to Archey with respect to his convictions for Counts I-IV in light of the evidence presented at trial.[96] The Court denied the petition for review.[97]

Now before the court is the instant habeas petition.

E.  Federal Court Proceedings.

Archey's 28 U.S.C. § 2254 amended habeas petition, filed September 26, 2016, makes one claim. He asserts that his trial counsel's failure to independently investigate Pentecost's possible exculpatory testimony prejudiced Archey and violated his Sixth Amendment right to effective counsel.[98] In Archey's August 24, 2017 merits brief, Archey's arguments expand to two claims: (1) the same ineffective assistance of trial counsel claim as in his petition;[99] and (2) that the Alaska courts made an unreasonable determination of the facts in light of the evidence presented when it mischaracterized evidence at trial regarding Archey's recorded statements during jail phone calls.[100]

---

[95] Dkt. 19 at 8, 39 at 16.

[96] Dkt. 19 at 8–9, 39 at 16.

[97] See Archey v. State, S-15916 (Alaska Supreme Court Order denying petition for review, September 4, 2015).

[98] Dkt. 19 at 10.

[99] Dkt. 39 at 20–24.

[100] Dkt. 39 at 18–20.

14

The state custodian opposes.[101] He argues that Archey is not entitled to relief under AEDPA for his ineffective assistance of counsel claim because the Alaska courts reasonably applied Strickland in adjudicating Archey's claim.[102] His merit brief in opposition only addresses Archey's first claim from "his first amended application, which is at issue here."[103] The state custodian contends that Archey has not demonstrated that his trial counsel's performance was deficient nor that Archey was prejudiced by any incompetence.[104]

Archey did not file a reply brief.

## III. ISSUES PRESENTED FOR REVIEW

1.    Was Alaska's resolution of Archey's Strickland claim contrary to, or an unreasonable application of, clearly established United States Supreme Court authority?

2.    Was Alaska's rejection of Archey's Strickland claim based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings?

## IV. DISCUSSION

After careful consideration of Archey's claims, this court finds controlling Supreme Court authority requires that his § 2254 petition for writ of habeas corpus be denied.

A. This report addresses both of Archey's claims as described in his merits brief, but primarily whether Alaska courts unreasonably applied Strickland in deciding Archey's claim of ineffective assistance of counsel.

Archey raises for the first time in his merits brief the contention that the Alaska Court of Appeals made an unreasonable determination of facts in denying his post-conviction

---

[101] Dkt. 22.

[102] Id. at 3.

[103] Dkt. 43 at 2, 12.

[104] Dkt. 43 at 16–21.

15

relief appeal.[105] Alaska responds that Archey raised only a single claim in his first amended habeas petition, that his trial counsel did not provide effective assistance for failing to investigate Pentecost.[106] Alaska does not brief whether the court's decisions were based on an unreasonable determination of the facts in light of the evidence, presumably relying on Archey's failure to plead the claim in either his initial habeas petition at Docket 1 or his first amended petition at Docket 19.[107]

We treat Archey's merits brief at Docket 39 as amending his habeas petition to include the second claim.[108]

B. The Standard of Review Used by Federal Courts for a Writ of Habeas Corpus Depends on Whether the Petitioner's Claims were Adjudicated on the Merits.

The district court's authority to issue a writ of habeas corpus is limited in scope by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified at 28 U.S.C. § 2254. The Supreme Court has interpreted the statute as existing to guard against only the most "extreme malfunctions in the state criminal justice systems, not [as] a substitute for ordinary error correction through appeal."[109] Of course, "even a single federal judge may overturn the judgment of the highest court of a State insofar as it deals with the application of the United States Constitution or laws to the facts in question[.]"[110] Yet, this court gives significant

---

[105] Dkt 39 at 18–20.

[106] Dkt. 43 at 12–13.

[107] Dkt. 22, 43.

[108] A habeas petitioner is required to "specify all the grounds for relief available" in his petition. Rule 2(b)(2). Rules Governing Section 2254 Cases in the U.S. District Courts available at http://www.uscourts.gov/sites/default/files/rules-governing-section-2254-and-section-2255-proceedings.pdf.

[109] Harrington v. Richter, 562 U.S. 86, 102–03 (2011).

[110] Bashor v. Risley, 730 F.2d 1228, 1233 (9th Cir. 1984) (quoting Sumner v. Mata, 449 U.S. 539, 543–44 (1981)).

deference to the state court, and despite whether the district court finds a petitioner's grounds for the writ compelling, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."[111]

28 U.S.C. § 2254 provides that when a state court has adjudicated a criminal petitioner's claim on the merits, the district court may not grant a habeas petition unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; (2) or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[112] Under that statutory framework, a state court decision contravenes clearly established federal law when it arrives at a conclusion that is "opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts."[113]

As relevant to the instant petition, the state court unreasonably applies clearly established federal law where it "identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case."[114] Where the state court has rendered judgment that a claim lacks merit, such judgment "precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision."[115] Put another way, the finality of a state court's judgment will not be disturbed unless there is "<u>no</u>

---

[111] <u>Harrington</u>, 562 U.S. at 102.

[112] 28 U.S.C. § 2254(d).

[113] <u>Godoy v. Spearman</u>, 834 F.3d 1078, 1083–84 (9th. Cir. 2016) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000)).

[114] <u>Id.</u>

[115] <u>Id.</u>

17

possibility fair-minded jurists could disagree that the state court's decision conflicts with this Court's precedents."[116] This standard is "difficult to meet . . . because it was meant to be."[117] Nonetheless, if the district court finds error in a state trial court's decision, and it is "in grave doubt about whether [the] error had substantial and injurious effect or influence on verdict and therefore finds itself in virtual equipoise about such issue, error is not harmless," and habeas corpus relief would be warranted.[118]

     C.  <u>The State Court Adjudicated Petitioner's Claim of Ineffective Assistance of Counsel on the Merits.</u>

When the State court decides a petitioner's claim on the merits, the federal district court is limited to the record before the State court,[119] and may only grant habeas relief if the requirements of § 2254(d) are satisfied. However, § 2254(d) does not apply if the State court did <u>not</u> decide the claim on the merits.[120] In that case, the district court should review the claim *de novo*.[121] For the reasons set forth below, this court concludes that Archey's claim of ineffective assistance was decided on the merits at the state court, and thus this court's review is limited to the state record and under the deferential constraints set forth in § 2254 (d).

     1.  <u>The operative decision under review is the Alaska Court of Appeals decision in Archey II</u>.

In the event the highest state court denies a claim without explanation, the relevant state court decision for the purposes of AEDPA is the "last reasoned state court

---

[116] <u>Harrington</u>, 562 U.S. at 102.

[117] <u>Id.</u>

[118] <u>Cooper v. Taylor</u>, 103 F.3d 366, 370 (4th Cir. 1996), certiorari denied 522 U.S. 824 (1997).

[119] <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181–182 (2011).

[120] <u>Cone v. Bell</u>, 556 U.S. 449, 472 (2009).

[121] <u>Rompilla v. Beard</u>, 545 U.S. 374, 390 (2005).

18

decision."[122] Such is the case with Archey's claim of unreasonable application of the <u>Strickland</u> standard in our case. The Alaska Supreme Court denied his petition without explanation,[123] and thus the last-reasoned state court decision was the decision of the Alaska Court of Appeals.[124] The parties do not dispute this.

> 2. <u>The Alaska Court of Appeals decided Archey's case while cognizant of its "federal constitutional dimensions" and it thus reached the merits of petitioner's claim; accordingly, this court must apply AEDPA's deferential standard of review.</u>

The state court need not cite federal law, nor even be aware of relevant federal law.[125] Citing state court decisions which rest on Supreme Court precedent is sufficient to constitute adjudication on the merits.[126] Indeed, in <u>Johnson</u>,[127] the Supreme Court reversed a Ninth Circuit decision and held that the California Court of Appeals reached the merits where it did not "expressly purport to decide a federal constitutional question,"[128] but extensively discussed a state supreme court opinion and where that opinion extensively discussed three federal cases.[129] In <u>Johnson</u>, it was of no consequence that the state supreme court ultimately rejected the cited federal courts' holdings on the presented issue – what mattered was that they knew they were grappling with a question exhibiting "federal constitutional dimensions."[130] In

---

[122] <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803–806 (1991). <u>See also</u> <u>Johnson v. Williams</u>, 133 S.Ct. 1088 ,1094 (2013) citing <u>Williams v. Cavazos</u>, 646 F.3d 626, 635 (2011).

[123] <u>See</u> <u>Archey v. State</u>, S-15916 (Alaska Supreme Court Order denying petition for review, September 4, 2015).

[124] <u>Archey II</u>.

[125] <u>Harrington</u>, 562 U.S. at 98; <u>Early v. Packer</u>, 537 U.S. 3, 7–8 (2002).

[126] <u>Baker v. City of Blaine</u>, 221 F.3d 1108, 1112 (9th Cir. 2000).

[127] <u>Johnson v. Williams</u>, 133 S. Ct. 1088, 1097 (2013).

[128] <u>Id.</u> at 1098.

[129] <u>Id.</u>

[130] <u>Id.</u>

19

other words, when the last reasoned state court opinion primarily relies on seminal state precedent to address a claim, but that state precedent at least substantially considered federal case law, a federal habeas court must find the merits to have been reached. The state Court of Appeals reached the merits in this case.

When deciding Archey's case, the Alaska Court of Appeals evaluated whether his trial counsel was ineffective for failing to establish proper grounds for excluding the jail phone call recording using the framework of Alaska cases Burton v. State,[131] Risher v. State,[132] and State v. Jones.[133] Thereunder, the court engaged a brief analysis that the "defendant must plead facts showing that (1) the attorney's performance fell below the standard of minimal competence for a criminal lawyer and (2) there is a reasonable possibility that the outcome of the trial would have been different but for the attorney's incompetence."[134] The court attributed this statement to Burton.[135] Second, the Court cited Jones, a prominent state case, for its strong presumption that counsel acted competently.[136] Jones compiles several state and – most importantly – several federal[137] cases in comparing and contrasting their respective standards and rules for ineffective assistance claims. Here, the Court of Appeals considered at least eleven federal cases concerning

---

[131]  180 P.3d 964, 968 (Alaska App. 2008).

[132]  523 P.2d 421, 424–25 (Alaska 1974).

[133]  759 P.2d 558, 569 (Alaska App. 1988) (cited in Archey II, 2015 WL 1881554 at *1).

[134]  Archey II, at *1.

[135]  See id. at *1 n.9.

[136]  See id. at *1, *1 n.10.

[137]  Strickland v. Washington, 466 U.S. 668, (1984); Beasley v. United States, 491 F.2d 687, 696 (6th Cir.1974); Murray v. Carrier, 477 U.S. 478 (1986) (quoting *569 Engle v. Isaac, 456 U.S. 107, 133–34, (1982)); United States v. Cronic, 466 U.S. 648, 658–62, (1984);  Kimmelman v. Morrison, 477 U.S. 365, (1986); Darden v. Wainwright, 477 U.S. 168, (1986); Baldwin v. Maggio, 704 F.2d 1325, 1334 (5th Cir.1983);  United States v. DeCoster, 624 F.2d 196, 211 (D.C.Cir.1976) (en banc); Chapman v. California, 386 U.S. 18, (1967);  United States ex rel. Cross v. DeRobertis, 811 F.2d 1008, 1016–17 (7th Cir.1987).

ineffective assistance. While some of the cases address secondary ineffective assistance issues not directly relevant to the Court of Appeals' presumption of competence analysis, these many cases inform this court that the state Court of Appeals was acutely aware that it was deciding an issue that had "federal constitutional dimensions." Therefore, this court finds that the issue related to ineffective assistance during the admission of the phone calls, was decided on the merits by the Alaska Court of Appeals.

    D.  Archey has not demonstrated that he is entitled to relief on the merits with respect to his ineffective assistance of counsel claim.

        1. The Alaska Court of Appeals Did Not Unreasonably Apply Clearly Established Federal Law When it Resolved Archey's Strickland Claim.

Archey argues, invoking Strickland, that the Alaska Court of Appeals' decision "was based on an unreasonable application of clearly-established federal law."[138] To establish a prima facie claim for ineffective assistance of counsel, a petitioner must demonstrate that the attorney's performance fell below the standard of minimal competence and also show a reasonable possibility that the outcome of the trial would have been different.[139] Archey claims that trial counsel "was ineffective when he decided not to call Pentecost as a witness without conducting adequate investigation."[140] He claims that the Court of Appeals did not adjudicate whether trial counsel's performance was deficient because it focused on whether there had been prejudice to Archey.[141] Archey urges this Court to therefore evaluate whether trial counsel's performance was deficient *de novo*.[142] Yet there is no need for this Court "to address both [the

---

[138] Dkt. 39 at 5.

[139] Strickland, 466 U.S. at 688–93.

[140] Dkt. 39 at 20.

[141] Dkt. 39 at 21.

[142] Dkt. 39 at 21.

performance and prejudice] components of the inquiry if the defendant makes an insufficient showing on one."[143] Even if this court were to agree that the trial counsel performed deficiently, and it does not, Archey cannot prevail because he has not shown prejudice. As discussed below, this court finds that Archey has failed to show a reasonable possibility that the outcome of his trial would have been different had his trial counsel presented the witness testimony of Pentecost, considering all the other evidence presented at trial.

### 2. Application of the Highly Deferential Standard.

A federal habeas court may grant habeas relief on the ground of ineffective assistance of counsel, over a lower state court's earlier judgment to the contrary, if the appellant shows that the state court's decision was contrary to or misapplied clearly established federal law.[144] In February 2016, the Ninth Circuit, sitting en banc, declared the Strickland test for ineffective assistance to be clearly established federal law for the purposes of habeas corpus in noncapital cases, and expressly overruled its earlier decisions to the contrary.[145] The Court also overruled the three-judge panel's opinion in the case before it, then remanded the case to the panel to reconsider its affirmance of the district court's denial of the writ.  On remand, the panel denied relief for a final time. In so doing, it reviewed the district court's decision de novo and applied[146] the Strickland test. The test is two pronged, and requires an appellant to show first that

---

[143] Strickland, 466 U.S. at 697.

[144] Yarborough v. Gentry, 540 U.S. 1 (2003); on remand 381 F.3d 1219.

[145] Daire v. Lattimore, 812 F.3d 766 (9th Cir. 2016) (en banc).

[146] The panel's original opinion included an alternate analysis under Strickland despite its observation that Ninth Circuit precedent did not view Strickland as clearly established law. Upon remand, the panel revisits, reapplies, and affirms its earlier analysis in light of the Ninth Circuit's en banc determination.

22

her trial counsel's performance was unreasonable under the totality of the circumstances.[147] If counsel's performance was unreasonable, then, second, the appellant must show that, but not for trial counsel's poor performance, the result of the trial would have been different.[148] Attached to trial counsel's actions is a rebuttable presumption that they constituted "sound trial strategy." [149] Indeed, at trial, counsel for the defendant is granted "wide latitude" in making "tactical decisions" on behalf of his client.[150]

The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States District Court. Under AEDPA, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law."[151] "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself."[152]

Accordingly, this court's inquiry is not to conduct a de novo Strickland analysis. Instead, its two duties are to, first, "determine what arguments or theories supported or . . . could have supported, the state court's decision;" and, second, to "ask whether it is possible fair-

---

[147] Daire v. Lattimore, 818 F.3d 454, 461 (9th Cir. 2016) (citing Strickland, 466 U.S. at 688).

[148] Id.

[149] Id. at 464 (quoting Strickland, 466 U.S. at 689 (internal quotation marks and citation omitted)).

[150] Id. at 461 (quoting Strickland, 466 U.S. at 689).

[151] Williams v. Taylor, 529 U.S. 362, 410 (2000).

[152] Harrington v. Richter, 562 U.S. 86, 101 (2011).

23

minded jurists could disagree that those arguments or theories are inconsistent with" the Supreme Court's Strickland jurisprudence.[153]

### 3. Defense counsel in Archey's case exercised reasonable professional judgment.

Archey asserts that his trial attorney was incompetent for failing to investigate Pentecost or to call him as a witness.[154] He relies on Pentecost's affidavit which states that he would have been available to testify at Archey's trial and he had knowledge that Samson, Archey's former girlfriend, manufactured methamphetamine in the trailer that Archey sometimes shared with her. Archey challenges his trial counsel's decision to move away from Pentecost's testimony based on, the attorney later recalled, statements of another attorney that Pentecost had troubling legal charges of his own. He states that trial counsel had a duty to investigate Pentecost's testimony himself and decide for himself whether Pentecost would be a helpful witness.[155]

Confounding the issue is a statement Pentecost makes in his affidavit, stating that he did talk to trial counsel at the time of trial and he did disclose then what he knew about Samson. Neither Archey nor the state custodian discuss the significance of this statement in their merits briefing. This statement is evidence of some investigation into Pentecost by trial counsel at the time of trial, and that it is reasonable that the attorney, who presumably met with dozens if not more witnesses each year, would not recall speaking with Pentecost during the lead-up to Archey's trial. Pentecost's mention of the meeting with the trial attorney establishes that counsel investigated Pentecost and made his own professional judgment at the time about whether to call him as a witness.

---

[153] Id. at 101–102.
[154] Dkt. 39 at 20.
[155] Dkt. 39 at 22.

Pentecost was simultaneously facing criminal charges in another matter. Samson was not sure of his name when she testified that "Lester" had called her on behalf of Archey, asking her to move his black bag. It was not clear that Pentecost was the person Samson testified about, or that he would testify that he did or did not participate in the call asking Samson to move the bag.[156] Pentecost, according to his affidavit, would only have been able to testify about having seen Samson manufacture methamphetamine. [157] This would have highlighted inconsistencies in Samson's testimony that she was not even aware of methamphetamine-making materials in her trailer. However, Pentecost did not have information that would necessarily exculpate Archey. Pentecost's affidavit did not state that he had not seen Archey manufacture methamphetamine. The prosecutor could have cross-examined Pentecost on that issue. Had Pentecost denied seeing Archey manufacture methamphetamine, the State could have attempted to impeach him, perhaps with his previous criminal convictions. Or, as counsel's defender colleague had suggested to defense counsel, Pentecost could have provided inculpatory testimony in consideration of Pentecost's open state case. On these facts, trial counsel's decisions are reasonable strategic choices. Considering the presumption that his attorney acted competently,[158] Archey cannot establish that his attorney's performance was deficient.

### 4. There is not a reasonable possibility that the outcome of Archey's trial would have been different had trial counsel further investigated and examined Pentecost.

Under Strickland, to show ineffective assistance of counsel, Archey must demonstrate "reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[156] Tr. 680–681.

[157] Dkt. 21-5 at 4–5.

[158] State v. Jones, 759 P.2d 558, 569 (Alaska App. 1988) (citing Strickland, 466 U.S. at 689; U.S. v. Cronic, 466 U.S. 648, 658 (1984)).

proceeding would have been different."[159] "Reasonable probability" means "probability sufficient to undermine confidence" in the jury verdict.[160] Archey overstates the significance of Pentecost's proposed testimony in light of all other evidence presented at trial. He states that Pentecost would have implicated Samson in methamphetamine production in the trailer and in ownership or use of the contents of the black duffel bag.[161] He also asserts that Pentecost's testimony would have been critical in impeaching Samson, who testified that she did not see any chemicals or manufacture methamphetamine herself.[162]

But Pentecost's testimony would have done little to discount the remainder of the evidence against Archey at trial. Samson disclosed that she had entered into a plea agreement with the state, and jurors could infer that she had some responsibility for the contents of the trailer and the black duffel bag. However, even if all of Samson's testimony was discounted, Sills testified that she saw Archey bring items used in the manufacture of methamphetamine to the trailer. Pat Price, the neighbor, testified that Archey visited his house and asked Archey to lock up the trailer before walking into the woods. Jurors could infer Archey did not want police to discover the contents of the trailer. In the jail phone calls with Archey's son, Archey talked in what could be characterized as a 'resigned tone' about the black bag found on the property. Archey's comments to his son about the bag could reasonably suggest Archey was distressed at its discovery. Jurors could reasonably infer Archey owned the bag and its contents.

---

[159] Hernandez v. Chappell, 878 F.3d 843, 852 (9th Cir. 2017) (quoting <u>Strickland</u>, 466 U.S. at 694).

[160] <u>Id</u>.

[161] Dkt. 39 at 23.

[162] Dkt. 39 at 23–24.

Archey argues that the jury could have heard Pentecost's testimony and still have credited Samson's and Sills's testimony, but that the standard is that the testimony taken as a whole might have influenced the jury's appraisal about the testimony of both sisters.[163] He does not explain why this is true, especially with respect to Sills's testimony. On this record, Pentecost would merely have offered information that Samson had made methamphetamine and had control of the trailer that contained products for making methamphetamine. Standing alone, this information may inculpate Samson, but it is too tenuous to undermine a determination of Archey's guilt on the four counts related to methamphetamine production.

In the present case, there is no possibility that "fairminded jurists could disagree" with Alaska's resolution of Archey's Strickland claim, and as such his habeas claim must be denied.[164] Pentecost's proposed testimony is simply not material to a determination of Archey's guilt or innocence.

### 5. The error included in the Alaska Court of Appeals opinion does not constitute an unreasonable determination of the facts in light of the evidence presented in a state court proceeding.

Archey claims, for the first time in his merits brief, that the Alaska Court of Appeals made an unreasonable determination of the facts in light of the evidence presented at trial when it adjudicated Archey's post-conviction relief appeal.[165] He specifically points out:

> Archey did not refer to Ms. Sills at any point during his phone calls with his son. According to the prosecutor's proffer at Tr. 923, Archey spoke about Ms. Sills – frustration with her communications with law enforcement – during a separate set

---

[163] Dkt. 39 at 24.

[164] Harrington v. Richter, 562 U.S. 86, 88 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

[165] Dkt. 39 at 3, 17, 18–20; see Archey II, 2015 WL 1881554. Archey II relies on the factual findings the Alaska Court of Appeals made in Archey I. See 2010 WL 2436739.

27

of phone calls to his mother on September 1, 2006.  Those calls were not admitted at trial.[166]

In contrast, the Court of Appeals stated:

> On the tapes, Archey's son mentioned that the police had found the black bag, and "Archey responded that someone should tell Sills to stop talking to the police." This evidence suggested Archey knew about the bag, and that he blamed Sills for its discovery.[167]

Archey's contention that Archey did not directly reference Sills in the call to his son is correct; phone calls between Archey and his mother existed, but were not played at trial. Relevant to our discussion, there were four jail calls: two between Archey and his son on August 31, 2006, and two between Archey and his mother on September 1, 2006.[168]  During the first call, Archey's son told Archey, "it was Bridget, she answered and then she was like they still here and got the black duffel bag [expletive noun] … and I don't know."[169]  The prosecutor wanted to present excerpts of the calls in her rebuttal case.[170] She conceded she would not seek to admit the calls between Archey and his mother, but argued for admission of the two jail calls to his son.[171]  Defense counsel objected, and an evidentiary hearing was conducted, which resulted in the trial court decision to allow excerpts from the two calls between Archey and his son as rebuttal evidence.[172]

The Court of Appeals factual error that "Archey responded that someone should tell Sills to stop talking to the police," was made in the Court's findings regarding whether the

---

[166] Dkt. 39 at 13 n.10.

[167] Archey I, 2010 WL 2436739 at *4 (Alaska App. June 16, 2010) (emphasis added).

[168] Tr. 731.

[169] Tr. 731, 965. Trial Exhibit 105, first recording at approximately 1:17.

[170] Tr. 908.

[171] Tr. 933.

[172] Tr. 965.

trial court "had discretion to admit the state's rebuttal evidence" of the jail calls.[173] It is well-established that "where state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to the petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable."[174]

For this court to act, however, the factual error must go to a material factual issue that is central to the petitioner's claim,[175] and that is not the case here. This error was not central to Archey's claim that the trial court abused its discretion to admit the phone calls, and not central to the defense counsel's decision whether to present Pentecost's testimony at trial. Archey argued to the Court of Appeals that "the trial court abused its discretion in admitting evidence in the State's rebuttal case of telephone calls he made to his son from jail."[176] The Court of Appeals explained the issue simply in its analysis:

> Archey's defense suggested that Sills owned the black bag and that he did not make any phone calls from jail asking Samson to move it. The State's rebuttal evidence indicated that Archey did make a phone call from jail suggesting that he knew about the black bag. This newly discovered evidence fell well within the judge's authority to allow new evidence to support the State's case-in-chief…"[177]

---

[173] Archey I, 2010 WL 2436739 at *4.

[174] Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir. 2004).

[175] Id.

[176] Archey I, 2010 WL 2436739 at *4. Archey also argued "the State violated the discovery rules by failing to disclose these recorded telephone calls before trial" and "the trial court found there was no discovery violation because the phone calls were newly discovered evidence." Archey I, 2010 WL 2436739 at *4. The Court of Appeals affirmed that the phone calls were not a discovery violation. For our purposes, the Court of Appeals' evaluation of the sufficiency of discovery is clearly "not a material factual issue that is central to the petitioner's claim" and the issue is not before this court. Taylor, 366 F.3d at 1001.

[177] Archey I, 2010 WL 2436739 at *5.

The existence of the phone calls were significant to the Court of Appeals because they contradicted testimony presented by Archey that no calls were made, and because it showed Archey knew about the existence of the black bag. The factual error by the appellate court that the jury heard evidence that "Archey said Sills should stop talking to police" is not material to either of these considerations. The error did not affect the fact that inculpatory phone calls had taken place. The factual error did not directly reference the black duffel bag; rather, Archey's son mentioned, "they still here and got the black duffel bag [expletive noun]."[178] Therefore, the inclusion of the error that "Archey responded that someone should tell Sills to stop talking to the police" did not go to a material factual issue central to Archey's claim.

The Court of Appeals' error was not relevant to a material factual issue central to the petitioner's claim in the instant § 2254(d) petition. Archey asserts that Alaska unreasonably applied clearly established Supreme Court Authority when it adjudicated a Fifth Amendment due process Strickland ineffective assistance of counsel claim,[179] namely that his defense counsel did not call Pentecost who may have provided information to contradict the testimony of the State's two leading witnesses. The Court of Appeals' mistaken finding does not affect Archey's Strickland claim before this court and is not related to a factual issue involving that claim; therefore it does not warrant relief.

---

[178] Tr. 731; Trial Exhibit 105, first recording at approximately 1:17.

[179] Dkt. 19 at 10; 39 at 20–24; Strickland v. Washington, 466 U.S. 668 (1984).

Case 3:15-cv-00213-SLG-SAO   Document 45   Filed 03/12/18   Page 30 of 31

## V. CONCLUSION

Based on the foregoing analysis, this court RECOMMENDS that Archey's Petition for Writ of Habeas Corpus be DENIED.

DATED this 12th day of March, 2018 at Fairbanks, Alaska.

S/ SCOTT A. ORAVEC
United States Magistrate Judge


Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **March 19, 2018**. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. Miranda v. Anchondo, *et. al*, 684 F.3d 844 (9th Cir. 2012). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation. United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **ten (10) pages** in length, and shall not merely reargue the positions presented in motion papers. Rather, objections and responses shall specifically designate the findings and recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **March 26, 2018**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).

Case 3:15-cv-00213-SLG-SAO   Document 45   Filed 03/12/18   Page 31 of 31