# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GARRY R. ARCHEY, JR.,<br><br>                      Petitioner,<br>  vs.<br>JOHN CONANT,<br>                      Respondent. | Case No. 3:15-cv-00213-SLG-SAO |

## ORDER RE PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Garry R. Archey, Jr.'s Amended Petition for Writ of Habeas Corpus, filed at Docket 19. Mr. Archey filed a merits brief in support of the amended petition at Docket 39. Respondent John Conant filed a merits brief in opposition at Docket 43.[1] The motion was referred to United States Magistrate Judge Scott A. Oravec pursuant to 28 U.S.C. § 636(b)(1)(B).

On March 12, 2018, the magistrate judge issued a Report and Recommendation ("R & R") at Docket 45. The magistrate judge recommended that the petition be denied and that this action be dismissed with prejudice. Mr. Archey filed objections to the R & R at Docket 46. Respondent John Conant filed a response on March 29, 2018 at Docket 49.

The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1). That statute provides that a district court "may accept, reject, or modify, in whole or in part, the findings

---

[1] Respondent filed a Notice of Errata at Docket 44, to which was appended Gordon Pentecost's affidavit.

or recommendations made by the magistrate judge."[2]  A court is to "make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made."[3]  But as to those topics on which no objections are filed, "[n]either the Constitution nor [28 U.S.C. § 636(b)(1)] requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct."[4]

## A.  BACKGROUND

On September 8, 2006, the State of Alaska indicted Garry R. Archey, Jr., on five counts related to the manufacture of methamphetamine in Soldotna, Alaska.[5]  Mr. Archey pleaded not guilty and proceeded to trial.  Lisa Samson, Mr. Archey's former girlfriend, was also charged with drug distribution offenses, and pleaded guilty to two offenses.[6]  As a condition of her plea agreement, Ms. Samson testified against Mr. Archey at his trial.[7]  There, Ms. Samson denied manufacturing methamphetamine and also denied recognizing that certain chemicals and material for manufacturing methamphetamine

---

[2] 28 U.S.C. § 636(b)(1).

[3] *Id.*

[4] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").

[5] Docket 39 at 7.

[6] Docket 39 at 3–4.  Ms. Samson pleaded guilty to reduced counts of fourth-degree misconduct, for possession of controlled substances and for maintaining a structure for the manufacture of methamphetamine.

[7] Docket 39 at 4.

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 2 of 20

were present in the trailer where she lived and in which Mr. Archey stayed.[8] Although potential witness Gordon Pentecost later stated that he could have provided testimony that undermined Ms. Samson's statements, Mr. Archey's trial counsel did not call Mr. Pentecost to testify.[9] Ms. Samson also testified that she had received a call from a friend of Mr. Archey who instructed her to move a black duffle bag that contained equipment used for the production of methamphetamine.[10] While seeking to find tapes of Mr. Archey's jail phone calls that might corroborate this testimony, the prosecution uncovered tapes of recorded conversations between Mr. Archey and his son, in which Mr. Archey indicates knowledge of the black duffle bag.[11]

The jury convicted Mr. Archey on all counts.[12] He was sentenced to 20 years on each of the first four counts and five years on the fifth count, all to run concurrently.

Mr. Archey appealed his conviction and sentence. Among other points, he argued that (1) insufficient evidence supported the conviction on Count V, maintaining a structure for the manufacture of methamphetamine, and (2) the trial court erred in admitting Mr. Archey's jail phone calls with his son.[13] The Alaska Court of Appeals reversed the

---

[8] Docket 39 at 8.

[9] *See* Docket 43-1 (Gordon Pentecost Affidavit).

[10] Docket 19 at 4; Docket 20-2 (Trial Tr. Vol. III) at 93–94. Although Ms. Samson initially testified that the call came from a man named "Lester," this was later treated by the parties as having been allegedly made by Gordon Pentecost. *See* Docket 20-2 at 94; Docket 19 at 4; *Archey v. State* (*Archey I*), No. A-10129, 2010 WL 2436739, at *4 (Alaska Ct. App. June 16, 2010). The prosecution did not present any evidence of a call by Mr. Archey to Gordon Pentecost. *See Archey I*, No. A-10129, 2010 WL 2436739, at *4.

[11] *See* Trial Exhibit 105; Docket 20-2 at 404–05.

[12] Docket 39 at 12.

[13] *Archey I*, No. A-10129, 2010 WL 2436739, at *1 (Alaska Ct. App. June 16, 2010).

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 3 of 20

conviction for Count V, but denied the rest of Mr. Archey's claims.[14] Mr. Archey petitioned for review to the Alaska Supreme Court. That petition was denied on August 31, 2010.[15]

Mr. Archey also initiated a post-conviction relief proceeding in the Alaska state court.[16] He filed an amended post-conviction relief application on August 30, 2011.[17] In his second amended post-conviction relief application, filed on March 19, 2012, Mr. Archey included the following reasons why his trial and appellate attorneys had been ineffective: (1) trial counsel failed to challenge the admission of the jail phone calls Mr. Archey made to his son; (2) trial counsel failed to adequately investigate potential exculpatory witness Gordon Pentecost;[18] and (3) appellate counsel failed to challenge

---

[14] *Id.* at *6.

[15] *See Archey v. State*, No S-13919 (Alaska Supreme Court Order).

[16] Docket 21-1 (PCR Application).

[17] Docket 21-2 (Am. PCR Application).

[18] Docket 21-5 (Second Am. PCR Application) at 1–2. Specifically, Mr. Archey asserted that Mr. Pentecost could have testified that Ms. Samson personally manufactured methamphetamine at her residence and was personally in control of the laboratory located there. Docket 21-5 at 1–2; *see* Docket 43-1.
    Mr. Pentecost signed an affidavit dated March 1, 2012 in which he stated: "During the spring and summer of 2006, I observed Lisa Samson making methamphetamine in her residence . . . in Soldotna. It appeared to me that she was in control of the meth lab at all times. In addition to the fact that it was located at her residence, she was the person who operated it, and she made statements that indicated to me that she believed it to be her property and under her control. When Gary Archey was charged with crimes related to the lab, I told his attorney, Hatten [sic] Greer, that I had personal knowledge that the lab really belonged to Lisa Samson. I told him that if necessary I would testify for the defense." Docket 43-1 at 1–2.
    Mr. Archey contends "[Trial counsel's] decision to forego Mr. Pentecost's exculpatory testimony was not the result of any tactical decisions on his part or, if it was the result of a tactical decision, that decision was unreasonable and was beneath the standard of care for attorneys employed in the provision of criminal defense in the Third Judicial District." Docket 21-5 at 2.
    Mr. Archey's trial counsel subsequently filed an affidavit in which he acknowledged his awareness of Mr. Pentecost and described speaking with a local defense attorney regarding Mr. Pentecost. Docket 21-6 (Hatton Greer April 19, 2012 Affidavit) at 2. Trial counsel stated that he "do[es] not recall if [he] spoke to Mr. Pentecost at this time." Docket 21-6 at 2.

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 4 of 20

the admission of the jail phone calls in Mr. Archey's petition for review to the Alaska Supreme Court.[19] The superior court dismissed the post-conviction relief application for failure to state a prima facie case.[20]

Mr. Archey then appealed the superior court's dismissal of his post-conviction relief application to the Alaska Court of Appeals. Mr. Archey renewed his claims that trial counsel was ineffective for failing to establish proper grounds for excluding the phone conversations Mr. Archey had with his son while incarcerated and that trial counsel was ineffective for failing to call Mr. Pentecost to testify at trial.[21] The Court of Appeals affirmed, holding that even if trial counsel had been ineffective in failing to investigate or present the testimony of Mr. Pentecost, Mr. Archey had not shown that he suffered prejudice as a result.[22] Mr. Archey's petition for review with the Alaska Supreme Court was denied.[23]

On November 4, 2015, Mr. Archey initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[24] On September 16, 2016, Mr. Archey filed an amended habeas petition, asserting that trial counsel's failure to investigate Gordon Pentecost's potentially exculpatory testimony violated Mr. Archey's Sixth Amendment

---

[19] Docket 19 at 7; Docket 39 at 14; Docket 21-1; Docket 21-2; Docket 21-5.

[20] *Archey v. State* (*Archey II*), No. A-11516, 2015 WL 1881554, at *1 (Alaska Ct. App. Apr. 22, 2015).

[21] *Id.*; Docket 21-13 (*Archey II* case).

[22] *Id.* at *3.

[23] *See Archey v. State*, S-15916 (Alaska Supreme Court Order denying petition for review, September 4, 2015).

[24] Docket 1 (Habeas Petition).

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 5 of 20

right to effective counsel.[25] Mr. Archey also stated that "the Court of Appeals' adjudication of [his] claim rested on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding."[26] In Mr. Archey's merits brief, filed on August 24, 2017, he alleged ineffective assistance of counsel for the failure to investigate Gordon Pentecost and also asserted that the Alaska court had made an unreasonable determination of the facts because it had mischaracterized evidence at trial regarding Mr. Archey's recorded jail phone calls.[27]

On March 12, 2018, the magistrate judge issued the R & R, recommending the denial of Mr. Archey's petition. The magistrate judge found that the Court of Appeals' factual mischaracterization was not relevant to a material factual issue central to Mr. Archey's claim and therefore did not provide a basis for relief.[28] With regard to the ineffective assistance claim, the magistrate judge found that Mr. Archey had not shown that the state court unreasonably applied clearly established federal law when it held that Mr. Archey was not prejudiced by trial counsel's approach to Mr. Pentecost.[29] Mr. Archey then filed objections to the R & R on March 19, 2018.[30]

## B. DISCUSSION

---

[25] Docket 19 at 10.

[26] Docket 19 at 10.

[27] Docket 39 at 19–20.

[28] Docket 45 at 30.

[29] Docket 45 at 21–22.

[30] Docket 46.

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 6 of 20

Mr. Archey raised five objections to the R & R, each of which the Court addresses de novo below.

1. "*Mr. Archey raised both grounds for relief in his amended petition.*"[31]

Mr. Archey first contends that the magistrate judge "fault[ed] Mr. Archey for not having identified Claim 2 in his amended petition."[32] The magistrate judge stated that Mr. Archey "raise[d] for the first time in his merits brief the contention that the Alaska Court of Appeals made an unreasonable determination of facts in denying his post-conviction relief appeal."[33] Mr. Archey points to a portion of his amended petition that alleged an unspecified unreasonable determination of the facts in light of the evidence presented at the state court proceedings.[34] As such, the magistrate judge's statement that the unreasonable determination of facts claim was not raised until the amended petition was not correct. Nevertheless, the magistrate judge fully considered this claim, "treat[ing] Archey's merits brief at Docket 39 as amending his habeas petition to include the second claim."[35] Therefore, this objection is moot, because the magistrate judge analyzed the unreasonable factual determination claim. However, the Court will not adopt the magistrate's statement that Mr. Archey's Claim 2 argument was not raised until his merits brief.

---

[31] Docket 46 at 1.

[32] Docket 46 at 1–2.

[33] Docket 45 at 15–16.

[34] Docket 46 at 1–2; Docket 19 at 10; *but see* Docket 19 at 5 ("In one of those phone calls, Mr. Archey spoke with his son, who disclosed that the police had located a black bag on Samson's property. Archey responded that someone should tell Sills to stop talking to the police.").

[35] Docket 45 at 16.

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 7 of 20

2. "*To obtain relief under 28 U.S.C. § 2254(d)(2), Mr. Archey does not have to prove that all reasonable jurists would conclude the state-court decision was unreasonable.*"[36]

Mr. Archey appears to argue that the magistrate judge applied an incorrect legal standard to his ineffective assistance claim.[37] The magistrate judge described "[t]he pivotal question [as] whether the state court's application of the *Strickland* standard was unreasonable."[38] The magistrate judge also stated that

> [T]his court's inquiry is not to conduct a de novo *Strickland* analysis. Instead, its two duties are to, first, "determine what arguments or theories supported or . . . could have supported, the state court's decision;" and, second, to "ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with" the Supreme Court's *Strickland* jurisprudence.[39]

Mr. Archey appears to contend that the magistrate judge erred by applying the standard articulated by the Supreme Court in *Harrington v. Richter*, in which the Court held that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."[40] Citing to a Supreme Court decision from 2000, *Williams v. Taylor*, Mr. Archey argues that the Supreme Court has "offered two seemingly contradictory definitions of the

---

[36] Docket 46 at 2.

[37] Docket 46 at 2–4 (citing *Williams v. Taylor*, 529 U.S. 362 (2000)).

[38] Docket 45 at 23.

[39] Docket 45 at 23–24 (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

[40] *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In *Richter*, the Supreme Court held that "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. The Court added, "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 8 of 20

standard for relief."[41]  Mr. Archey argues that pursuant to *Williams v. Taylor*, "a habeas Petitioner does not bear the burden of proving unanimity among fair-minded judges about the correctness of the state-court decision in order to show that the state court's decision is 'unreasonable.'"[42]  Mr. Archey further asserts that "[t]he standard announced in *Harrington* (i.e., relief is foreclosed so long as fair-minded jurists – plural – could disagree about the merits of the state court decision), should not be interpreted as requiring a habeas petitioner to bear the impossible burden of proving that *all* reasonable jurists would be in agreement about the correctness of the state court's adjudication of the claim."[43]

Mr. Archey does not point to a particular statement of law by the magistrate judge that he maintains is incorrect, and thus the objection is overruled on that basis.  Moreover, although there may be some tension between the Supreme Court's statements in *Taylor* and *Richter*, the Supreme Court has more recently instructed courts to ask "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."[44]  The magistrate judge cited to and applied this controlling Supreme Court precedent.[45]

---

[41] Docket 46 at 2 (citing *Williams v. Taylor*, 529 U.S. 362 (2000)).

[42] Docket 46 at 3.

[43] Docket 46 at 4.

[44] *Richter*, 562 U.S. at 102.

[45] Docket 45 at 27 ("In the present case, there is no possibility that 'fairminded jurists could disagree' with Alaska's resolution of Archey's *Strickland* claim, and as such his habeas claim must be denied.").

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 9 of 20

3. "*The failure to call Pentecost as a witness was objectively unreasonable and constituted a violation of Strickland's deficiency prong.*"[46]

Mr. Archey has asserted that his trial counsel was ineffective for failing to call potential witness Gordon Pentecost at his trial.[47] Mr. Archey contends that Mr. Pentecost could have testified as to Ms. Samson's involvement in the process of producing methamphetamine, thus undermining her testimony implicating Mr. Archey at trial.[48] The Alaska Court of Appeals did not adjudicate whether trial counsel's performance was deficient in this regard. Rather, it held that "even assuming [Mr.] Archey's trial attorney was incompetent for failing to call Pentecost as a witness, [Mr.] Archey has not shown that he suffered prejudice as a result."[49] However, on habeas review, the magistrate judge addressed the adequacy of trial counsel's performance on this issue, and found that "[d]efense counsel in [Mr.] Archey's case exercised reasonable professional judgment."[50]

Mr. Archey contends that the Court should reject the magistrate judge's recommendation and should instead find that Mr. Archey's trial counsel was ineffective not only for failing to call Mr. Pentecost at trial, but also for failing to adequately investigate the possibility of calling Mr. Pentecost as a witness.[51] Mr. Archey argues that "[i]n the

---

[46] Docket 46 at 4.

[47] Docket 46 at 4–5.

[48] *See supra* note 18.

[49] *Archey II*, No. A-11516, 2015 WL 1881554, at *3 (Alaska Ct. App. Apr. 22, 2015).

[50] Docket 45 at 24.

[51] Docket 46 at 4–5. The magistrate judge found that Mr. Pentecost's affidavit "stat[ed] that he did talk to trial counsel at the time of trial and he did disclose then what he knew about Samson." Docket 45 at 24. But Mr. Archey argues that "even assuming [trial counsel] spoke with Pentecost,

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 10 of 20

context of impeachment witnesses, the Ninth Circuit has held that, although counsel's approach to impeachment is often viewed as a tactical decision, and such decisions do not constitute deficient conduct simply because there are better options, a poor tactical decision may constitute deficient conduct if 'the defendant can overcome the presumption that, under the circumstances, the challenged action or lack of action might be considered sound trial strategy.'"[52] Mr. Archey maintains that trial counsel was ineffective for failing to "make any attempt at conducting a thorough pretrial investigation that would have revealed valuable impeachment evidence that would have undermined the prosecution's assertion that Archey—and Archey alone—had knowledge and access to the chemicals which formed the gravamen of the state's case."[53]

However, as the magistrate judge found, the record indicates that Mr. Archey's trial counsel did in fact investigate the possibility of eliciting Mr. Pentecost's testimony at trial. In trial counsel's April 19, 2012 affidavit, he recalls that he inquired about Mr. Pentecost with a local defense attorney who was familiar with Mr. Pentecost.[54] Trial counsel also indicated that he considered Mr. Pentecost as a potential witness, before deciding not to call him at trial.[55] Furthermore, Mr. Pentecost himself stated in his affidavit that he had

---

that bare fact alone does not invariably give rise to the conclusion that [trial counsel's] decision to *forego* calling Pentecost as a witness was competent." Docket 46 at 4.

[52] Docket 46 at 5–6 (quoting *Reynoso v. Giurbino*, 462 F.3d 1099, 1113 (9th Cir. 2006) (alterations omitted).

[53] Docket 46 at 6.

[54] Docket 21-6 at 2 ("I spoke with a local defense attorney regarding Mr. Pentecost. That local defense attorney was Carol Brenckle. I believe she had recently represented a co-defendant of Mr. Pentecost. Ms. Brenckle was of the opinion that if Mr. Pentecost was facing legal trouble, he would try to help out the State in hopes of getting consideration on his case.").

[55] Docket 21-6 at 1–2 ("My memory of how Mr. Pentecost came to be considered a potential

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 11 of 20

told trial counsel that he had personal knowledge of relevant facts and could testify at trial if necessary.[56] Therefore, this Court adopts the finding of the magistrate judge that counsel did investigate Mr. Pentecost by communicating directly with him.[57] At trial, trial counsel initially indicated that he planned to call Mr. Pentecost to testify.[58] That trial counsel ultimately decided not to call Mr. Pentecost to testify as an impeachment witness does not demonstrate a failure to perform an adequate pretrial investigation.[59] Therefore, Mr. Archey's assertions do not rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[60]

*Reynoso v. Giurbino*, the case cited by Mr. Archey, does not support a different conclusion. In *Reynoso*, the defendant's trial counsel failed to interview the only two purported eyewitnesses in a murder trial.[61] Consequently, trial counsel did not learn that

---

witness was that either Lisa Sampson, or Joanna Sampson-Sills testified that while Mr. Archey was in jail Mr. Archey called them and told them to hide the duffle bag containing meth making equipment. . . . I decided not to call Mr. Pentecost."). Trial counsel also stated, "I no longer have access to Mr. Archey's file because I no longer work with Osterman Law Office, and Mr. Osterman has moved out of state. Thus, all of the following statements are based on memory." Docket 21-6 at 1. Trial counsel's affidavit is dated April 19, 2012; the trial was held in June 2007.

[56] Docket 43-1 at 2.

[57] Docket 45 at 9 ("[T]his court finds that defense counsel [ ] did talk directly to Pentecost at the time of Archey's trial.").

[58] Docket 20-2 at 162.

[59] A number of concerns could have persuaded trial counsel not to call Mr. Pentecost. For one, at the time of Mr. Archey's trial, Mr. Pentecost was facing criminal charges, and trial counsel may have been concerned that Mr. Pentecost would testify against Mr. Archey in an effort to gain favor with the prosecutor. Furthermore, testimony that Ms. Samson had actively participated in the production of methamphetamine would not have undermined the evidence that Mr. Archey manufactured methamphetamine, and therefore trial counsel may well have concluded that the potential benefits of Mr. Pentecost's testimony would not outweigh the risks.

[60] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[61] 462 F.3d 1099 (9th Cir. 2006).

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 12 of 20

both eyewitnesses had contacted law enforcement in response to an offer of a cash reward in return for information about the crime. Given the paucity of other evidence against the defendant, this impeachment evidence may have been especially critical to the defense. As the Ninth Circuit explained,

> Reynoso's trial counsel failed to interview the only two witnesses who placed Reynoso at the scene of the murder. She also failed to cross-examine these critical witnesses effectively, neglecting to examine the relationship of the reward to their pivotal testimony in this case. The consequence was that the defense did not provide the jury with the motive to lie that would have explained why the State's eyewitnesses' identifications of the defendant were not worthy of credence. Given that the testimony of the two witnesses was central to the prosecution's case and that the case against Reynoso was otherwise exceedingly weak, such a performance unquestionably fell outside "the wide range of reasonable professional assistance" contemplated by *Strickland* [*v. Washington*].[62]

In *Reynoso*, trial counsel later acknowledged that "cross-examination about the reward would have been entirely consistent with [counsel's] decision to cross-examine another similarly situated witness" and "conceded that such questioning likely would have weakened [one of the key witness's] credibility substantially."[63] Here, in contrast, the potential impact of Mr. Pentecost's testimony is far less clear—he was not a key prosecution witness, nor has Mr. Archey demonstrated that trial counsel failed to interview Mr. Pentecost. To the contrary, the record demonstrates that trial counsel communicated with but then did not call this potential witness to testify. In short, Mr. Archey has not

---

[62] *Id.* at 1120.

[63] *Id.* at 1114.

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 13 of 20

demonstrated that trial counsel failed to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[64]

> 4. "*[Mr.] Archey has shown that he was prejudiced by his trial counsel's actions, and fair-minded jurists would agree that the state court's resolution of this issue was unreasonable.*"[65]

28 U.S.C. § 2254 provides that when a state court has adjudicated a criminal petitioner's claim on the merits, a district court may grant a habeas petition when the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Here, the Alaska Court of Appeals determined that Mr. Archey "failed to show that he was prejudiced by his trial attorney's decision not to call Pentecost as a witness," stating:

> As the superior court emphasized, Pentecost's affidavit did not assert that he had any knowledge of Archey's involvement (or lack of involvement) in the manufacture of methamphetamine or in the possession of drugs used to manufacture methamphetamine—the conduct underlying Archey's convictions. Pentecost only asserted that he could testify that Samson, not Archey, controlled the methamphetamine laboratory.[66]

Similarly, the magistrate judge found "that [Mr.] Archey has failed to show a reasonable possibility that the outcome of his trial would have been different had his trial counsel presented the witness testimony of Pentecost, considering all the other evidence presented at trial."[67]

---

[64] *Strickland*, 466 U.S. at 691.

[65] Docket 46 at 7.

[66] *Archey II*, 2015 WL 1881554, at *3.

[67] Docket 45 at 22.

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 14 of 20

To prove prejudice under *Strickland*, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[68] Here, as before the Alaska Court of Appeals and the magistrate judge, Mr. Archey asserts that trial counsel's failure to call Mr. Pentecost as a witness was prejudicial because it allowed Lisa Samson's testimony that she had not participated in the production of methamphetamine to go unchallenged. Mr. Archey asserts that

> Samson denied seeing evidence of methamphetamine manufacturing in her home. She specifically denied seeing any bottles or chemicals. She specifically denied that she had ever used methamphetamine before meeting Mr. Archey. Her testimony was bolstered in part by her sister's tearful assertion that Archey had used Ms. Samson as a "gopher" for his scheme . . . . Pentecost's testimony would have significantly undermined this testimony, and by extension the prosecution's depiction of Samson as a blameless puppet.[69]

Mr. Archey maintains that had Mr. Pentecost testified, he would have undermined Ms. Samson's testimony to such an extent that a jury would not have concluded that he was guilty of at least one of the charges against him. However, the substance of Mr. Pentecost's testimony is entirely speculative, and there has been no adjudication of what Mr. Pentecost likely would have stated at trial. In short, Mr. Archey has not shown that reasonable jurists would find the state court's decision on the issue of prejudice was unreasonable.

As the Alaska Court of Appeals recognized, even if Mr. Pentecost's testimony had undermined Ms. Samson's statements that she was unfamiliar with the process of

---

[68] *Strickland*, 466 U.S. at 694.

[69] Docket 46 at 7–8 (internal citations omitted).

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 15 of 20

manufacturing methamphetamine, it is not clear how that testimony would have benefitted Mr. Archey.[70] Prior to Mr. Archey's trial, Ms. Samson had pleaded guilty to possession of methamphetamine and maintaining a dwelling for the keeping or distribution of controlled substances, and the jury was informed of that fact.[71]

More importantly, testimony related to Ms. Samson's familiarity with methamphetamine production would not have significantly undermined the other evidence against Mr. Archey, even if it did undermine Ms. Samson's credibility as a witness and further implicate her in the production of methamphetamine. The evidence against Mr. Archey included testimony by Joanna Samson-Sills that Mr. Archey was involved in producing methamphetamine, and that her sister, Ms. Samson, had been contacted by Mr. Archey through a third party, instructing her to move the black duffle bag that contained equipment for producing methamphetamine.[72] Pat Price, a neighbor, informed police that Mr. Archey had asked him to lock the trailer with a padlock once police arrived.[73] Furthermore, Mr. Archey's phone calls from jail indicated an awareness of the black duffle bag and its contents, giving rise to a potential inference that he possessed the bag and used it to produce methamphetamine.[74] This evidence provides

---

[70] *See Archey II*, 2015 WL 1881554 at *3 ("Archey was ultimately acquitted of the charge that he maintained a dwelling used for keeping or distributing controlled substances. Consequently, even if Pentecost had testified that Samson controlled the laboratory, there is no reasonable possibility that his testimony would have altered the outcome of Archey's case. Archey has therefore failed to show that he was prejudiced by his trial attorney's decision not to call Pentecost as a witness.").

[71] Docket 46 at 7.

[72] Docket 39 at 9; Docket 20-2 at 125, 128.

[73] Docket 39 at 6.

[74] *See* Docket 39 at 11.

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 16 of 20

ample grounds for the jury's verdict, even if Mr. Pentecost had testified. Therefore, Mr. Archey has not shown that the Alaska Court of Appeals unreasonably applied the prejudice prong of the *Strickland* standard.[75]

> 5. "*The erroneous characterization of the phone calls was an unreasonable determination of the facts which was material to the Court of Appeals' adjudication of Mr. Archey's Sixth Amendment claim.*"[76]

In Mr. Archey's direct appeal, the Alaska Court of Appeals mischaracterized the content of the jail phone calls between Mr. Archey and his son on August 31, 2006, stating:

> On the tapes, Archey's son mentioned that the police had found the black bag, and Archey responded that someone should tell [Ms. Samson-]Sills to stop talking to the police. This evidence suggested that Archey knew about the bag, and that he blamed [Ms. Samson-]Sills for its discovery.[77]

In fact, the tapes admitted into evidence and played to the jury do not contain a reference by Mr. Archey about Ms. Samson-Sills.[78] Therefore, the Court of Appeals' statement that "Archey responded that someone should tell [Ms. Samson-]Sills to stop talking to the police" was factually inaccurate.[79] Mr. Archey contends that he is entitled to habeas relief

---

[75] *See White v. Woodall*, 134 S. Ct. 1697, 1705 (2014) (recognizing that "a state-court decision involves an unreasonable application of [Supreme Court] precedent if the state court identifies the correct governing legal rule but unreasonably applies it to the facts of the particular state prisoner's case" (citations and alterations omitted)).

[76] Docket 46 at 8.

[77] *Archey I*, No. A-10129, 2010 WL 2436739, at *4 (Alaska Ct. App. June 16, 2010).

[78] *See* Trial Exhibit 105.

[79] It appears that Mr. Archey did make a statement to the effect of wanting Ms. Samson-Sills to stop talking to the police. However, he did so in the conversations he had with his mother from jail, not his son. *See* Docket 20-2 at 405. The prosecution stated at trial that "the only recording offered with regard to the two conversations with [Mr. Archey's] mother is that he repeatedly says somebody's got to tell Joanna [Samson-Sills] to shut up and stop talking. Don't talk to anybody, don't talk to cops." Docket 20-2 at 405. However, the two tapes containing Mr. Archey's jail phone calls with his mother were not admitted into evidence. *See* Docket 20-2 at 415 (the prosecution

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 17 of 20

because this factual misstatement was material to the state court's decision regarding his ineffective assistance of counsel claim.[80]

However, the Court of Appeals' reference to the content of the phone calls was made in the context of determining whether the trial court had the discretion to admit the state's rebuttal evidence of the jail calls. Specifically, the calls had been admitted at trial as evidence to rebut Mr. Archey's claims that he did not make phone calls from jail and did not know about the black duffle bag.[81] The Court of Appeals' factual misstatement, however, was limited to stating that Mr. Archey had referred in those calls to Ms. Samson-Sills.[82] The magistrate judge concluded that the Court of Appeals' factual misstatement did not "go to a material factual issue that is central to [Mr. Archey's] claim."[83]

Mr. Archey contends that because the Court of Appeals misstated the contents of the phone calls, it was more likely to reach the wrong conclusion with regard to his ineffective assistance claim. Mr. Archey asserted in his merits brief, "[b]earing in mind

---

stated "I also agreed to eliminate the -- both of the calls to the mother so that we're just focusing on the two calls with the son.").

[80] Docket 46 at 8.

[81] *Archey I*, 2010 WL 2436739 at *5 ("Archey's defense suggested that Sills owned the black bag and that he did not make any phone calls from jail asking Samson to move it. The State's rebuttal evidence indicated that Archey did make a phone call from jail suggesting that he knew about the black bag. This newly discovered evidence fell well within the judge's authority to allow new evidence to support the State's case-in-chief 'for good reason' and to make the 'presentation effective for the ascertainment of the truth.'").

[82] Mr. Archey's statements on the tapes do evince an awareness of the black duffle bag after his arrest. *See* Trial Exhibit 105, first recording at approximately 1:17.

[83] *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004) ("[W]here the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable."), *abrogated on other grounds by Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014).

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 18 of 20

that the phone calls had only limited probative value of Archey's knowledge of the black bag, it logically follows that the testimony of Lisa Samson and Joanna Samson-Sills contributed greatly to the jury's verdicts."[84] However, Mr. Archey's assertion requires inferences that are not supported by the record. At trial, the phone calls between Mr. Archey and his son were discussed in the context of demonstrating Mr. Archey's awareness of the black duffle bag.[85] Therefore, the connection between the Court of Appeals' factual misstatement and potential prejudice resulting from trial counsel's decision not to call Mr. Pentecost to testify is exceedingly attenuated, if it exists at all. Accordingly, Mr. Archey has not demonstrated that the Court of Appeals' factual misstatement regarding Mr. Archey's statement about Ms. Samson-Sills was relevant to a material factual issue that is central to the ineffective assistance claim.

## C. CONCLUSION

The Court has reviewed the parties' briefing, the records on file, and the decisions of the Alaska Court of Appeals on both direct review and on the petition for post-conviction relief. The Court has considered de novo each of the Petitioner's objections to the Report and Recommendation. Based on that review, the magistrate judge's Report and

---

[84] Docket 39 at 20.

[85] *See* Docket 20-2 at 404–05. At trial, both defense counsel and the prosecution described the conversations between Mr. Archey and his son. Both parties discussed the fact that Mr. Archey and his son talked about the black duffle bag. Docket 20-2 at 404–05. Furthermore, the discussion at trial indicated that the relevance of the phone calls was related to the black duffle bag. *See* Docket 20-2 at 213. Regarding the tapes of jail phone calls by Mr. Archey, the prosecution stated, "There's two with the son on August 31st and there's two with his mother on September 1st. Those are the only recordings I have." Docket 20-2 at 217. Furthermore, the prosecution asserted that "[t]he only real relevant ones are the ones to his son." Docket 20-2 at 213. Defense counsel then stated that "[t]he implication, as I understand it, [is] that [the prosecution] is going to try and get in [ ] [that] his son would not have known about the black bag unless is [sic] was Mr. Archey's black bag." Docket 20-2 at 213.

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 19 of 20

Recommendation at Docket 45 is ACCEPTED,[86] the Amended Petition for Habeas Corpus at Docket 19 is DISMISSED with prejudice, and the relief sought in Petitioner's merits brief at Docket 39 is DENIED.

The Court further finds that Mr. Archey has not made the requisite substantial showing of the denial of a constitutional right, and therefore a certificate of appealability will not be issued by this Court.[87] Mr. Archey may request a certificate of appealability from the Ninth Circuit Court of Appeals.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 30th day of March, 2018 at Anchorage, Alaska.

                                */s/ Sharon L. Gleason*
                                UNITED STATES DISTRICT JUDGE

---

[86] The R & R is accepted in its entirety, with the exception of the magistrate judge's statement that Mr. Archey did not raise any claim regarding the state court's unreasonable determination of the facts until his merits brief, contained in section IV, subsection A, and section IV, subsection D(5), of the R & R. *See* Docket 45 at 15–16, 27; *supra* p. 7–8.

[87] In a 28 U.S.C. § 2254 proceeding, a petitioner may only take an appeal if a circuit or district judge issues a certificate of appealability. *See* Fed. R. App. P. 22. Pursuant to § 2253(c)(2), the certificate may only be issued if the petitioner "has made a substantial showing of the denial of a constitutional right." The COA inquiry asks "whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Here, Mr. Archey has not shown that jurists of reason could disagree with the resolution of the constitutional claims presented in this case when applying AEDPA's highly deferential standard.

3:15-cv-00213-SLG-SAO, *Archey, Jr. v. Conant*
Order re Petition for Writ of Habeas Corpus
Page 20 of 20